**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANNA M. JOHNSON,

        Plaintiff,        CIVIL ACTION NO. 12-cv-12383

   vs.

                        DISTRICT JUDGE AVERN COHN

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Anna Johnson seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 17). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 11) be GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 17) be DENIED.

## II. PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Social Security Income with protective filing dates of August 5, 2008, alleging that she had been disabled since July 26, 2008, due to complications from a stroke. (*See* TR 14, 16-19.) The Social Security Administration denied benefits. (*See* TR 14.) Plaintiff requested a *de novo* hearing, which was held on September 7, 2010, before Administrative Law Judge (ALJ) Andrew G. Sloss, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work as a housekeeper. (TR 21-22.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. The parties then filed their Motions for Summary Judgment.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff was 51 years old at the time of the administrative hearing and 49 years old at the time of alleged onset. (*See* TR 30.) Plaintiff has a tenth-grade education (including some special-education classes) and past work experience as a housekeeper in a hotel. (TR 30-31.) She testified that she hadn't worked anywhere since July 26, 2008, when she had a stroke; at the time of the hearing, she had no source of income. (TR 30-31.) Plaintiff stated that she had to leave her job because she could no longer clean rooms or change beds due to right-arm weakness caused by her stroke. (TR 31.)

On further examination by her attorney, Plaintiff indicated that she worked as a housekeeper for several years and that she worked at her last job from 2001 through 2008. (TR 32.) She testified that due to her stroke, she also had trouble with her memory. (TR 33.) She stated that if she had

returned to work, she would have had problems remembering which rooms she had cleaned, and she indicated that her husband has to remind her whenever she has an appointment. (TR 33-34, 42-43.) Moreover, she added that sometimes she would have trouble finding the words to complete a sentence, so she would have to start over. (TR 36-37.) She also testified that she had weakness in her right leg and that she had lost the vision in her right eye. (TR 34.) Plaintiff (through her attorney) implied that her memory problems caused her to forget her other symptoms. (TR 32-35.) She also testified that she has seizures and takes Dilantin to control them.[1] (TR 37.) Plaintiff added that she did not read anything since her stroke, that she got mad for no reason at all, that she would probably get in trouble if a boss told her something that she didn't like, and that she used to drink heavily, but at the time of the hearing, she had cut back significantly.[2] (TR 38-39.) She also added that she tried to avoid crowds. (TR 42.)

Plaintiff testified that she would spend a typical day on the computer talking to family and friends. (TR 31-32.) She lived with her husband, who would cook and clean and handle all of the household shopping. (TR 31.) Plaintiff cleaned the dishes herself, but she indicated that she and her husband had purchased plastic dishes so that she wouldn't break them. (TR 31, 36.) Plaintiff testified that her husband would help her get in the shower, cut her food for her, and help her button

---

[1] Because Plaintiff is not aware of the seizures when they occur, her husband testified that she had 8-10 seizures in 2009 and another 3 seizures in 2010 (up through the date of the hearing). (TR 45.) He would remind her to take her medication. (TR 46-47.) He further testified that Plaintiff had "completely changed all together" since her stroke; they had been married for 32 years. (TR 47.)

[2] Plaintiff testified that she drank a few cans of beer a week, but she admitted that she told one of her physicians that she drank two cases of beer a day. (TR 39-40.) She testified that what she told the physician was not true. (TR 40.)

her pants. (TR 35-36.) She testified that she could lift about five pounds. (TR 36.) She did not handle any of the household finances, but she did not handle them before her stroke either. (TR 40-41.)

### B. Medical Record

Defendant asserts that "[t]he ALJ adequately presented . . . the medical evidence in this case" and does not set forth a factual account contrary to that which is presented by Plaintiff. (Docket no. 17 at 7.) The Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion and in Plaintiff's brief in support of her Motion. (TR 16-21; Docket no. 11 at 7-10.) The Court also takes note of Plaintiff's "Evidence of Record not Cited in Decision," which draws the Court's attention to records from various medical facilities and to testing performed by Dr. George Pestrue as part of an evaluation of Plaintiff's cognitive abilities. (Docket no. 11 at 10-12.) Because Defendant does not challenge Plaintiff's account of the record, the Court has reviewed Plaintiff's medical records and will incorporate citations as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

The ALJ asked the VE to describe Plaintiff's past relevant work, and the VE stated that Plaintiff worked as a housekeeper and performed the work at the medium exertion level. (TR 48.) The ALJ then asked whether a person of Plaintiff's age, education, and past work experience would be able to perform Plaintiff's past relevant work if the individual "must never climb ladders, ropes or scaffolds[, could] frequently climb ramps or stairs[, could] frequently balance, stoop, kneel or crawl[,] must avoid moderate exposure to hazards[, and was limited to] simple well structured task activity." (TR 48.) The VE testified that such an individual could perform Plaintiff's past relevant

work as a housekeeper. (TR 48.)

The ALJ then asked the VE whether such a person would be precluded from work at all exertional levers if, "due to a combination of medical conditions, associated pain and mental impairments[, the individuals was] unable engage in sustained work activity on a regular and continuing basis." (TR 48-49.) The VE testified that such an individual would be precluded from all work. (TR 49.) Plaintiff's attorney then asked the VE if Plaintiff would be precluded from all employment if she had "an inability to interface or interact with supervisory personnel . . . [where] she would become confrontational, disagree with the supervisor, and refuse to accept the direction." (TR 49.) The VE testified that such a condition would preclude employment. (TR 49.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2012; had not engaged in substantial gainful activity since July 26, 2008; and suffered from severe memory deficit as a result of stroke; alcoholism; and seizures; she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 16-19.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not credible and, therefore, afforded her statements no weight; the ALJ further gave "minimal weight" to Dr. Pestrue's report. (TR 21.) The ALJ found that Plaintiff retained the residual function to perform medium work except that Plaintiff could not climb ladders, ropes, or scaffolds; could frequently climb ramps or stairs; could frequently balance, stoop, kneel, crouch, or crawl; must avoid moderate exposure to hazards; and was limited to simple, well-structured activity. (TR 20.) Thus, the ALJ found that Plaintiff could perform her past relevant work. Therefore, she was not disabled under the Social Security Act at any time from July 26, 2008, through the date of the ALJ's decision. (TR 21-22.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

7

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be remanded under sentence 4 for the following reasons: (1) the ALJ failed to account for Plaintiff's moderate difficulties in concentration, persistence, or pace in Plaintiff's RFC; (2) Plaintiff's RFC, as set forth by the ALJ, is "internally inconsistent;" (3) the ALJ did not "adequately articulate the reasons for finding a lack of credibility;" (4) the ALJ improperly applied the treating-physician rule; and (5) the ALJ failed to cite to or discuss certain parts of the record.[3] (*See* docket no. 11.)

### 1. Concentration, Persistence, or Pace

Plaintiff argues that despite finding that Plaintiff has moderate limitations with concentration,

---

[3]In separate subsections, Plaintiff also asserts that "[C.] The RFC fails to reflect the claimant's maximum remaining ability;" and "[D.] The ALJ erred in the hypothetical propounded to the vocational expert by understating claimant's restrictions." (Docket no. 11 at 18-20.) These subsections, however, do not raise new arguments. Plaintiff's subsection C merely argues that the ALJ failed to include limitations supported by the record; Plaintiff does not expound on what limitations are missing. Plaintiff's subsection D argues that the ALJ's hypothetical questions to the VE were improper because they did not include all of Plaintiff's functional limitations; this argument assumes that Plaintiff's RFC is improper, which relies wholly on Plaintiff's arguments related to concentration, persistence, or pace discussed in subsection A of her brief. Therefore, the Court will not address these arguments individually as any such discussion is already included in the Court's analysis of Plaintiff's other arguments.

8

persistence, or pace, the ALJ did not place any such limitations in the hypothetical questions presented to the VE. (Docket no. 11 at 13.) Instead, Plaintiff asserts, the ALJ limited the RFC to work involving "simple, well-structured activity." (*Id.*) Plaintiff contends that this inaccurately depicts her limitations. (*Id.* at 14.) Defendant argues that the ALJ's hypothetical falls within a "zone of reasonable choice" because the RFC is a fact-based determination. (Docket no. 17 at 8-13.)

Moderate limitations in concentration, persistence, and pace must be conveyed to the VE through the ALJ's hypothetical, or the VE's responses are insufficient to provide support for the ALJ's decision. *Edwards v. Comm'r*, 383 F.Supp.2d 920, 930-31 (E.D. Mich 2005). A hypothetical that includes "simple, routine, unskilled work" is not, by itself, sufficient to frame a moderate limitation in concentration, persistence, and pace. *See id.* Such a limitation impacts a claimant's ability to meet quotas, stay alert, or work at a consistent pace even when performing simple, routine, unskilled jobs. *Id.* at 930. But there is no requirement that the ALJ specifically state that the claimant is "limited in concentration, persistence, or pace." *See Lewicki v. Comm'r*, No. 09-11844, 2010 WL 3905375, *3 (E.D. Mich. Sept. 30, 2010). The ALJ must create a hypothetical based on the facts of each individual case. *See id.*

In Step 3 of the sequential process, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties." (TR 19.) The ALJ provided no basis for this determination other than to suggest that the severity of these limitations was tempered by her "ability to sustain attention sufficiently long and appropriately complete tasks such as playing computer games, talking on the telephone and carrying on conversations with family and friends." (TR 19-20.) Thus, although he gave Dr. Pestrue's opinion "minimal weight," it appears that the moderate limitation was based, at least in part, on the portion of the opinion that the ALJ discussed in his Step 2 determination:

9

> [Plaintiff] was markedly limited in her ability to understand and remember one or two-step instructions; understand and remember detailed instructions; carry out detailed instructions and maintain attention for extended periods. She was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances . . . . She was moderately limited in [her] ability to remember locations and work-like procedures [and] carry out simple one of (sic) two step instructions.

(TR 18-19.)

The hypothetical that the ALJ presented to the VE limited Plaintiff's RFC to "simple, well structured task activity." While Defendant is undoubtedly correct that ALJ based Plaintiff's RFC on the facts of this particular case, the phrase "simple, well structured task activity" does not account for any actual limitations in concentration, persistence, or pace. To the extent that the ALJ relied even to a minimal degree on Dr. Pestrue's opinion, the hypothetical did not convey any limitations with regard to Plaintiff's ability to carry out instructions, maintain a schedule, maintain attendance, or remember work-like procedures. And to the extent that the ALJ did not rely on Dr. Pestrue's opinion whatsoever, the hypothetical did not convey any limitations with regard to Plaintiff's ability to sustain attention or complete tasks, which were apparently some of the bases under which the ALJ determined at Step 3 that Plaintiff had moderate limitations. Simply put, the phrase "simple, well structured activity" could not have given the VE any understanding of the Plaintiff's particular limitations. Therefore, the Court should remand this matter for a hearing in which the ALJ must provide the VE with a sufficiently detailed hypothetical under which to determine whether Plaintiff could perform her past relevant work.

### 2.     The "internal consistency" of Plaintiff's RFC

Plaintiff asserts that the ALJ's determination of Plaintiff's RFC is "internally inconsistent" because "it is impossible to square the assertion that [Plaintiff] could frequently balance, stoop, kneel, crouch or crawl, or frequently climb ramps or stairs with the assertion that she must avoid

even 'moderate' hazards." (Docket no. 11 at 14.) As Defendant notes, however, there is nothing inconsistent about these two findings; Plaintiff's postural limitations are distinct from her need to avoid hazards. Given Plaintiff's problems with seizures, the Court agrees with Defendant that "[i]t certainly seems prudent and reasonable to preclude [such] an individual . . . from exposure to heights or dangerous machinery even though that same person ha[s] largely normal physical capabilities."[4] (Docket no. 17 at 15-16.) Therefore, the Court should deny Plaintiff's Motion with regard to this issue.

### 3. Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements

---

[4]In his discussion, the ALJ referred to Dr. Pestrue's opinion that such hazards would include "driving, running machinery, working at heights and any other job where seizures would put her or others at right of harm." (TR 18.) Defendant notes that this is also consistent with the opinion of Dr. Goodpasture, a state agency medical consultant. (Docket no. 17 at 14 (citing TR 449-52).)

credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff's argument related to the ALJ's credibility determination is set forth over three-and-a-half pages, but Plaintiff's entire argument (with the exception of the final paragraph) merely sets for the law and standards by which the ALJ is required to render his decision. (*See* docket no. 11 at 15-18.) Plaintiff's argument states, in full, as follows:

> The ALJ attacked [Plaintiff's] credibility based on selective excerpts from the records and her 'courtroom' demeanor. ([TR.] 48.) However, given the result of the cognitive testing performed by Dr. Pestrue and the objective medical evidence of record, it is somewhat incomprehensible that [Plaintiff] would be aware enough from a cognitive standpoint to consciously embellish her symptoms or attempt to manipulate the proceedings. The attack on [Plaintiff's] credibility is and was unwarranted and negatively reflects upon the ALJ's decision-making process.

(Docket no. 11 at 18.)

The ALJ afforded Plaintiff's subjective complaints no weight. (TR 21.) Contrary to Plaintiff's interpretation, however, the ALJ did not "attack" Plaintiff's credibility. As noted, "an

12

ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Thus, making a credibility determination is part of the decision-making process; it cannot follow that doing so would reflect negatively on an ALJ's implementation of that process.

Moreover, Plaintiff's argument focuses on the following determination of the ALJ:

> [Plaintiff] was not a credible witness on her own behalf, and appeared to be exaggerating her symptoms. For example, she could barely lift her arm to take the oath before testifying, but the consultative examiner found 5/5 strength in the upper extremity bilaterally, and 5/5 grip strength bilaterally. Also, at one point in her testimony, she pointed to her husband in the hearing room, exhibiting no difficulty raising her arm.

(TR 21.) Even if the ALJ's determination were limited to this finding, the Court would be remiss to ignore the substantial deference afforded to the ALJ in such a determination. Notably, Plaintiff does not provide any basis to discredit the ALJ's determination; Plaintiff merely suggests that Plaintiff does not have the cognitive ability to manipulate the proceedings. (*See* docket no. 11 at 18.) Plaintiff's argument, however, is mere conjecture.

But the ALJ's credibility determination was not limited to the selection quoted above. The ALJ also found that (1) "[t]he medical evidence does not support the level of symptomology alleged;" (2) Plaintiff "engages in essentially typical daily and social activities;" (3) she received essentially conservative treatment; (4) she does not treat with a physician or psychiatrist on a regular basis; (5) her medication appears to work properly to control her symptoms without any side effects; and (6) "she has been found to have normal muscles (sic) strength and tone, no motor or sensor weakness, [and] no deformity or atrophy." (TR 21.) The ALJ also found that while Plaintiff told Dr. Pestrue that she "can't read at all," she "was in special ed," and she "can't read a newspaper at all and . . . never could;" she told the ALJ that "she spent her entire day on the computer

communicating with relatives."[5] (TR 19, 21.) Additionally, while discussing Plaintiff's impairments at Step 2, the ALJ noted that when Plaintiff presented in the emergency room at Bay Regional Medical Center for purported hearing loss, she "acted as though she could not hear, although at times she did seem to be hearing." (TR 19.) As the ALJ described, "Everything was discussed with her husband and again the examining physician noted that it seemed at times the claimant was able to hear and seemed to be pulling this on, for some reason." (TR 19.) Therefore, because the ALJ was sufficiently specific to make clear to Plaintiff and to the Court that he afforded no weight to the Plaintiff's subjective complaints and his reasons for affording such weight, the Court should deny Plaintiff's Motion with regard to this issue.

### 4. Weight of the Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more

---

[5]Plaintiff also testified that she could not read a newspaper, but it is unclear whether she intended to convey that she could not read at all or whether she had been unable to read a newspaper since the time of her stroke. (TR 38 ("No I don't read. . . . I don't even read the paper any more.").) If Plaintiff intended to convey that she could not read at all, this testimony would conflict with her prior testimony that she communicated with her family on the computer. If Plaintiff intended to convey that she used to read, this testimony would conflict with her statement to Dr. Pestrue that she "can't read at all." Either way, this testimony supports the ALJ's determination that Plaintiff's testimony was not credible.

weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

Plaintiff's entire argument with respect to this issue is made up of legal standards and rules; Plaintiff does not make a single factual allegation or argument with regard to the ALJ's application of the medical opinions in this matter. (*See* docket no. 11 at 22-23.) Assuming, arguendo, that Plaintiff intended to assert that the ALJ should have afforded more weight to Dr. Pestrue's opinion,[6] Plaintiff has not provided any evidence to suggest that Dr. Pestrue was Plaintiff's treating physician or that Plaintiff received any mental health treatment whatsoever. (Docket no. 17 at 20.) Thus, because the treating-physician rule does not apply, the ALJ did not err when he gave "minimal weight" to Dr. Pestrue's opinion. Moreover, the ALJ explained why he gave the opinion minimal weight: "it is not fully supported by objective medical findings and appears to be based entirely on the claimant's subjective complaints[; t]he opinion conflicts with the medical record as a whole and not (sic) fully supported by the evidence." (TR 21.) Therefore, the Court should deny Plaintiff's Motion with regard to this issue.

### 5. The ALJ's use of the Record

Plaintiff contends that the ALJ erred when he "ignored literally hundreds of pages of relevant medical records." (Docket no. 11 at 21.) But "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not

---

[6]In her Response to Defendant's Motion, Plaintiff argues that the ALJ should have afforded more weight to Dr. Pestrue's opinion with regard to her mental deficiencies. (Docket no. 18 at 5.)

considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *see also Walker v. Sec't of HHS*, 884 F.2d 241, 245 (6th Cir. 1989). There is nothing in this matter to suggest that the ALJ did not consider the medical record as a whole.

Plaintiff draws the Court's attention to a set of records from Shands Jacksonville Hospital and Oceanway Medical Center that support her contention that she has a problem with seizures. (*Id.* at 10-11.) But the ALJ found that Plaintiff's severe impairments included a problem with seizures and that she should avoid all hazards due to this impairment. (TR 16.) Thus, the Court can infer that the ALJ reviewed these records. While Plaintiff cites to evidence that she argues the ALJ failed to consider, Plaintiff does not indicate what additional conclusion that ALJ should have drawn after reviewing this evidence.

Plaintiff also draws the Court's attention to "the results of cognitive testing performed by Dr. Pestrue during his evaluation" and argues that the ALJ failed to consider these tests. (Docket no. 11 at 11.) As Defendant argues, however, the ALJ did not mention the test scores by name or address the raw scores, but he did discuss the results:

> [Plaintiff's] mild mental retardation level cognitive skills would limit her working in any job requiring normal skills. Her reading, spelling and math skills were at a second grade level. She had memory deficits. All of her memory subtests indicated deficits in both auditory and visual skills.

(TR 18.) Plaintiff asserts that based on these tests, and "[c]ontrary to the assertion in the ALJ's opinion, the conclusions advanced by Dr. Pestrue were not solely based upon the Plaintiff's complaint." (Docket no. 11 at 11.) Thus, it appears that Plaintiff takes issue not with the ALJ's failure to *consider* this evidence but with how the ALJ *interpreted* the evidence. Therefore, because the ALJ appears to have considered all of the evidence in Plaintiff's medical record (even if he did not specifically cite to it), the Court should deny Plaintiff's Motion with regard to this issue.

**VI.     CONCLUSION**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 11) should be GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment (docket no. 17) should be DENIED.  This matter should be remanded for a hearing in which the ALJ should be required to provide the VE with a sufficiently detailed hypothetical under which to determine whether Plaintiff could perform her past relevant work.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 31, 2013         s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 31, 2013         s/ Lisa C. Bartlett
                            Case Manager

18